## The State Court Opinions

The state court record provides 3 rulings on this claim:

1.     **THE STATE TRIAL COURT**.  The state trial court made 2 findings with respect to the introduction of the evidence:  (1) that the error was inadvertent and (2) that there was no prejudice flowing from handling of the evidence *after* it was introduction inadvertently by the prosecutor.  (T.T., 12/2/1997, p. 107).

2.     **THE STATE COURT OF APPEALS**. The Michigan Court of Appeals ruled as follows:

> Defendant next argues that the trial court erred in denying his motion for a mistrial the basis of Jeremy Wilkes' testimony that defendant was involved in a gang.  We disagree.  This Court reviews a trial court's decision to deny a motion for a mistrial for an abuse of discretion.  Wilkes' brief mention of defendant's gang involvement did not rise to the level of 'an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial.'  People v. George Luis DeJesus, Docket No.209388, p. 9 (June 18, 1999) (Internal cites omitted).

3.     **THE STATE SUPREME COURT**.  The Michigan Supreme Court denied leave to appeal in a standard order. People v. George Luis DeJesus, ( May 31, 2000).

Since the Michigan Supreme Court denied Petitioner leave to appeal, this Court must "look through" the unexplained denial by the Michigan Supreme Court to the last reasoned decision as the basis for the state court's judgment.  Ylst v. Nunnemaker, 501 U.S. 797 (1991); Shackleford v. Hubbard, 243 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

This Court should therefore look to the Court of Appeals opinion on this issue, <u>People</u> v. <u>George Luis DeJesus</u>, Docket No.209388, p. 9 (June 18, 1999) with respect to the mandates of 28 U.S.C. §2254(d).

## State Court Exhaustion

Before seeking a federal writ of habeas corpus, the petitioner must exhaust available state remedies by giving the state courts an opportunity to correct violations of federal rights. 28 U.S.C. §2254(b)(1). Exhaustion requires that the petitioner "fairly present" his claim to each appropriate state court thereby *alerting* that court to the federal nature of the claim. <u>Duncan</u> v. <u>Henry</u>, 513 U.S. 364, 365 (1995); <u>Baldwin</u> v <u>Reese</u>, _____ U.S. ____ (No. 02-964, March 2, 2004).

Petitioner fairly presented this claim in both the Michigan Court of Appeals and the Michigan Supreme Court. In the Michigan Supreme Court and the Michigan Court of Appeals, Petitioner's attorney alerted the appellate court to the federal basis for this claim by citing both the United States Constitution and the decision of <u>Dawson</u> v. <u>Delaware</u>, 503 U.S. 159 (1992). The state appellate courts were "fairly presented" with an "opportunity" to remedy the due process violation and failed to do so.

## The State Court Decisions Were Contrary To Or Unreasonably Applied Clearly Established Federal Law And Unreasonably Determined the Facts

The Michigan Supreme Court simply denied leave to appeal and the Michigan Court of Appeals did not address the whether the erroneous admission of the gang evidence violated Petitioner's federal

rights.  Accordingly, this Court must conduct an independent review of the state court record and determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." Harris v. Stovall, 212 F.3d 940, 443 (6th Cir. 2000).

As noted, the last reasoned state opinion was that of the Michigan Court of Appeals and in their opinion the matter did not amount to "an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's right to get a fair trial." People v. George Luis DeJesus, Docket No.209388, p. 9 (June 18, 1999).  Similarly, the trial court found that since the evidence was "inadvertently" brought to the attention of the jury and the prosecution did not *exploit* the evidence after its admission, there was no need for a mistrial. (T.T., 12/2/1997, p. 107).

In this case, both the trial court (pre-trial) and Court of Appeals (not prejudicial) either held or accepted that the admission of gang-related evidence was erroneous.[4]  This Court must defer to state court findings on issues of state law.  See, e.g., Vroman v. Brigano, 346 F.3d 598, 603 (6th Cir. 2003).  This Court, therefore, must determine whether the gang-related evidence rose to the level of a constitutional violation sufficient to justify issuance of a writ of habeas corpus.

Admission of gang-related testimony may be appropriate when it is probative of a witness's bias toward a defendant.  United States v Abel,

---

[4]      It may be assumed that the trial court properly applied Michigan Rules of Evidence 401-403.

469 U.S. 45, 49 (1984).  In Abel the Court held that it was permissible to impeach a defense witness by showing that both the witness and defendant belonged to the same gang whose members had sworn to lie on behalf of other gang members.  Abel therefore permits admitting gang-related evidence *only* when it is relevant to a material issue at trial.  The Court has noted that gang evidence is inherently prejudicial and that admission of gang affiliation evidence in a criminal trial may be constitutional error when such evidence is irrelevant to the issues to be tried.  Dawson v. Delaware, 503 U.S. 159 (1992).[5]  As explained by the Seventh Circuit in United States v. Irvin, 87 F.3d 860 (7th Cir. 1996):

> Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior.  There is there always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict.  Guilt by association is a genuine concern whenever gang evidence is admitted.  87 F.3d at 865.

In United States v. Hendrix, 52 F.3d 326 (6th Cir. 1995), the Sixth Circuit found that improper admission of gang evidence can be sufficiently prejudicial to justify reversal of a conviction.  Specifically, the Sixth Circuit found that admission of gang evidence tainted the trial where there was no proof that the crime involved gang activity and the gang evidenced seemed to "appeal to jurors' prejudices" rather than their disinterested judgment of guilt or innocence.

---

[5]     In Dawson the Court found that the defendant's First Amendment rights were violated by admission of gang-related evidence at sentencing where the evidence provide nothing other than beliefs.

Here, the analysis is no different. Reference to gang membership, whether or not true, had no bearing on whether he committed the crime to be determined by the jury. This was not a gang killing; nothing in the testimony indicates that it was. The trial judge rejected the state prosecutor's argument regarding relevancy and excluded the evidence. The state appellate courts made no findings that it was admissible.

There was no proper purpose and it was not material to any issue. The *only* purpose served by admission of the evidence was to invoke negative connotations and images of criminal activity in the minds of the jurors' and distract them from dispassionately weighing the evidence. The jury was told at the start of trial that there was "dissention" between Petitioner and the victim and further that Petitioner's next-door home was a gathering place for his group. (T.T., 12/2/1997, p. 19). The jury was then given evidence that Petitioner was a member of a gang that promoted trouble. (T.T., 12/2/1997, p.p. 67-68).

This was an ugly and brutal offense; but Petitioner claimed innocence. There was no forensic evidence-connecting Petitioner to this crime. There was only the bargained for testimony of a brute who admitted to raping the victim and then cast the blame for her death on Petitioner. The evidence was not overwhelming. There was the testimony of an admitted rapist and alleged co-defendant and the reference to gang membership. The evidence not only served an improper purpose, it was prejudicial in context.

40

There is no requirement that a constitutional violation be intentional or long-drawn-out in order to grant habeas relief. What is required is for this court to examine whether the violation had a substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993). This test does not say *only* errors that turn into convictions are harmful. Brecht requires an analysis that is different than simply measuring the sufficiency of the evidence, it asks, "what effect the error had or reasonably may be taken to have had upon the jury's decision." Kyger v. Carlton, 146 F.3d 374, 382 (6th Cir. 1998). Stated otherwise, if this Court harbors "grave doubt" as to whether the error impacted the fairness of the petitioner's trial the writ of habeas corpus should be granted. O'Neal v. McAninch, 513 F.3d 432, 435 (1995).

Applying the above principles, Petitioner George Luis DeJesus, submits that this Court will find that it is compelled to grant a writ of habeas corpus in order to effectuate his constitutional right to a fair trial.

41

## II.   THE STATE TRIAL COURT ERRED BY ALLOWING INADMISSIBLE HEARSAY EVIDENCE IN AT TRIAL, DEPRIVING PETITIONER OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL.

### The Issue Involves Clearly Established Federal Law

A threshold question in any habeas appeal is whether the petitioner makes his or her claim under a rule of law that was clearly established federal law at the time of the offense as defined by the United States Supreme Court. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." Pointer v. Texas, 380 U.S. 400 (1965). Sixth Amendment protections are not so broad as to exclude all hearsay statements, Maryland v. Craig, 497 U.S. 836, 847-848 (1990), may be admitted *only* if within a firmly rooted exception to a hearsay rule, Lilly v. Virginia, 527 U.S. 116, 124 (1999).

Petitioner claims that his right to a fair trial as determined by the United States Supreme Court, 28 U.S.C. §2254(d), were violated by the state trial court admitting hearsay evidence that did not fall within any firmly rooted exception to a hearsay rule. The constitutional violation had a substantial and injurious effect or influence in determining the jury's verdict as described by the United States Supreme Court in Brecht v. Abrahamson, 507 U.S. 619 (1993).

### The Constitutional Violations

The first constitutional violation was Terrell Gholston's testimony that Brandon Gohagen had told him about the killing after Gohagen had

42

told Detective Harvey.   Gholston's testimony was extensive and related to the jury in great detail how Gohagen "spilled the beans" relating to the actions of both DeJesus brothers on the night of the sexual assault and subsequent slaying of the victim. (T.T. 12-8-97 p.p. 72-73).   Defense counsel objected to the hearsay testimony and the trial judge permitted its entry as a prior consistent statement to rebut allegations of recent fabrications. (T.T. 12-8-97 p.p. 73-74). Thereafter, Gholston's told the jury that the state's key witness had told him that (a) the DeJesus brothers were already in the home when Gohagen got there, (b) Melvin forced the victim to perform oral sex on Gohagen while Gohagen was "shocked", (c) that both DeJesus brothers were armed, (d) that Gohagen went outside for air and when he returned, (e) that he looked down the stairs and saw a tied up victim being kicked to death by the DeJesus brothers. (T.T. 12-8-97 p.p. 74-82).   The second constitutional violation was the testimony of Angela Rodriguez that the deceased, Margaret Midkiff (Angela's mother) had told her more than once that she did not like Melvin DeJesus, did not want her son handing around with them, and that they were trouble. Defense counsel objected and the trial judge admitted the hearsay under a "state of mind" exception to the hearsay rule. (.TT. 12-2-97 p.p. 60-61).

Petitioner submits that the hearsay evidence did not fall into a firmly rooted exception to the hearsay rule and denied a fair trial.

### The State Court Opinions

The state court record provides 2 rulings on this claim:

43

1.    **THE STATE COURT OF APPEALS**. The Michigan Court of

Appeals ruled as follows:

> Defendant George DeJesus first argues that the trial court
> erred in admitting the testimony of Terrell Gholston
> regarding the statements Gohagen made to him with respect
> to Gohagen's and defendant's involvement in Midkiff's
> murder because Gohagen's statements did not qualify as
> prior consistent statements under MRE 801(d)(1)(B).
> However, as discussed in above with our resolution of this
> issue in codefendant Melvin DeJesus' appeal, the admission
> of the testimony was proper under MRE 801(d)(1)(b).
> Defendant repeatedly raised the possibility that Gohagen's
> testimony was influenced by the plea agreement.   Thus,
> Gohagen's prior consistent statements, which were made
> before the plea agreement was offered, were offered to rebut
> defense counsel's charge that Gohagen's statements were
> influenced by the plea agreement.  MRE 801(d)(1)(B); <u>Tome</u>,
> <u>supra</u>; <u>Rodrguez</u>, <u>supra</u>.
>
>  Defendant next argues that the trial court abused its
> discretion in admitting the testimony of Angela Rodriquez
> that Midkiff told her that she did not like defendants and
> that she thought "they were trouble."  However, defendant
> failed to object to the admission of the testimony at trial.
> Because the admission of the testimony was not plain error
> affecting defendant's substantial rights, we will not further
> review this issue.   MRE 103(d).   <u>People</u> v. <u>George Luis
> DeJesus</u>, Docket No.209388, p. 9 (June 18, 1999).

2.    **THE STATE SUPREME COURT**.   The Michigan Supreme

Court denied leave to appeal in a standard order. <u>People</u> v. <u>George Luis</u>

<u>DeJesus</u>, (May 31, 2000).

Since the Michigan Supreme Court denied Petitioner leave to

appeal, this Court must "look through" the unexplained denial by the

Michigan Supreme Court to the last reasoned decision as the basis for

the state court's judgment.  <u>Ylst</u> v. <u>Nunnemaker</u>, 501 U.S. 797 (1991);

<u>Shackleford</u> v. <u>Hubbard</u>, 243 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

44

This Court should therefore look to the Court of Appeals opinion on this issue, People v. George Luis DeJesus, Docket No.209388, p. 9 (June 18, 1999) with respect to the mandates of 28 U.S.C. §2254(d).

## The State Court Decision Was Contrary To Or Unreasonably Applied Clearly Established Federal Law Or Because The State Court Unreasonably Determined the Facts

The Michigan Court of Appeals correctly identified the law governing this claim by referencing Tome v. United States, 513 U.S. 150 (1995). However, its determination was based upon an unreasonable application of clearly established federal law and an unreasonable determination of the facts in light of the evidence. 28 U.S.C. §2254(d).

In Tome v. United States the Supreme Court looked at FRE 801(d)(1)(B) and after stressing the importance of applying evidentiary rules properly to ensure fair trials found that a prior consistent statement may not be used unless if comports with the evidentiary requirement that it was made before a motive to fabricate arose. The policy behind the Court's decision was clearly that witnesses might not be bolstered if it jeopardizes the right to a fair trial. 115 S. Ct. at 704-5.

In this case, the trial court admitted the hearsay testimony of Gholston to the rebut a charge that Gohagen's testimony was fabricated to obtain a plea bargain for his admitted role in the rape and slaying of the victim. (T.T. 12-8-97 p.p. 73-74). The Michigan Court of Appeals found it properly admitted under the "prior consistent statement" exception to the hearsay rule, which provides for admission of prior

45

consistent statements to rebut a charge of recent fabrication.  See Mich. R. Evid. 801(d)(1)(B); Fed. R. Evid. 801(d)(1)(B).  In both instances the state courts found that because the defense had challenged the credibility of star witness Gohagen and Gohagen's plea-offer was made after he gave the statements, the hearsay evidence was properly entered. People v. George Luis DeJesus, Docket No.209388, p. 9 (June 18, 1999).

In Tome the Court noted that, "it may be difficult to ascertain when a particular fabrication, influence, or motive arose."  Here, Petitioner claimed that the motive to fabricate occurred *after* Gohagen's arrest and *after* he was confronted with evidence that his DNA had been found in the victim's body.  Petitioner further claimed that the prior consistent statement had been made *after* he had been extradited from Florida and was sitting in jail facing rape and murder charges.  To hold, as did the Michigan Courts, that because the statement occurred *before* the plea agreement was actually offered is to put the cart before the horse.

A review of the sequence of events leading to the prior consistent statement of Gohagen to Gholston is in order:  (1) the police suspected that Gohagen and the DeJesus brothers were involved in the offense; (2) on November 9, 1995 DNA evidence was collected and confirmed Gohagen's involvement, but not the DeJesus brothers; (3) on September 18th a warrant was issued for the arrest of Gohagen and on September 19, 1995 Gohagen fled to Florida with his friend Gholston; (4) acting on a tip Gohagen and Gholston were arrested in Florida and on September 25,

46

1995, confronted with the DNA evidence Gohagen admitted to raping the victim but blamed her death on the DeJesus brothers; and (5) after Gohagen was returned and placed in Oakland County Jail on September 27, 1995, Gohagen "spilled his guts" and told his friend Gholston how the DeJesus brothers murdered the victim. [Points (1), (2), (3) & (4) = T.T. 12-8-97 p.p. 159-162; 165] [Points (3) & (5) = T.T. 12-8-97 p.p. 71-72, 84]. Notably, Gohagen did not discuss with Gholston any details of the crime *prior* to his arrest (T.T. 12-8-97 p.p. 71-72), but only after confessing to a limited role in the crime and Gholston took that version to the police on October 1, 1995. (T.T. 12-8-97 p. 83).

Under these circumstances, the *object* of the motive to fabricate was the desire to *obtain* a plea offer, and to admit the hearsay testimony because the statements came before the object had been obtained in an unreasonable determination of the facts. Plainly, the motive of Gohagen to fabricate was his desire to *obtain* a plea agreement and admission of a consistent statement implicating the DeJesus brothers, carried by Gohagen's <u>friend</u> to the police, and this Court must now determine whether the admission of this inflammatory evidence rendered Petitioner's trial fundamentally unfair. While it is true that errors in the application of state evidentiary laws are generally not cognizable as ground for federal habeas relief, <u>Estelle</u> v. <u>McGuire</u>, 501 U.S. 62, 67-68 (1991), when the evidentiary ruling is "so egregious that it results in a denial of fundamental fairness, it may violate due process and thus

47

warrant habeas relief." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003); Clemmons v. Sowder, 34 F.3d 352, 356 (6th Cir. 1994).

The introduction of the hearsay evidence was devastating in this case. Gohagen was not only the star state witness he was the only witness to implicate the DeJesus brothers in this offense at all. It cannot be said that the testimony of Gohagen was not buttressed by the self-serving hearsay evidence or not necessary to the state's case. Gohagen's self-incriminating statements were made only after being confronted with DNA evidence showing that he had raped the deceased and Gohagen's testimony was itself the result of plea offer. Having made a deal with the devil, the state needed to find some way to shorten his horns and did so by telling the jury "see, it's not just for the deal, he's always maintained that the DeJesus brothers committed the murder." Here, the admitted hearsay testimony was not just a brief comment such as "we did it," or "they helped." But a lengthy self-serving step-by-step account of *how* the crime was committed and *how* the DeJesus brothers – not Gohagen – committed murder and gave evidence on each element of the offense.

Briefly, as to Angela Rodriquez, the Michigan Court of Appeals found that defense counsel's failure to object precluded review. This finding is not only erroneous, co-counsel did object, but not an adequate and independent ground to preclude habeas review, since Michigan law has consistently held that in a joint trial an objection by one defendant serves as objection by the other defendant. (See footnote no. 3). Nor can

48

the hearsay be deemed harmless in context. The hearsay evidence of Gholston gave the jury a detailed account of the offense; the hearsay evidence of Angela Rodiquez gave the jury a possible motive for the crime.

For purposes of federal habeas review, a constitutional error may only be considered harmless if it did not have a "substantial and injurious effect or influence on in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also Gilliam v. Mitchell, 179 F.3d 990 (6th Cir. 1999) (Brecht applies if federal court is first to review for harmless error), and O'Neal v. McAninch, 513 U.S. 432 (1995) (writ must issue if court has "grave doubt" regarding violation of Brecht).

In Barker v. Yukens, 199 F.3d 867 (6th Cir. 1999), the Sixth Circuit emphasized that it is not proper for a reviewing court to stand in the place of the jury and weigh competing evidence and decide that some evidence is more believable than others. Here, this Court cannot possible determine what effect the *inclusion* of the hearsay had in determining the jury's verdict given the lack of other evidentiary support. Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993).

## Conclusion

In light of the above, this Court should, at a minimum, be in grave doubt as to the whether the inclusion of the hearsay testimony had substantial and injurious effect in determining the jury's verdict. O'Neal v. McAninch, 513 F.3d 432, 435 (1995).

III. **THE STATE TRIAL COURT DEPRIVED PETITIONER OF HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY PERMITTING THE PROSECUTION TO PRESENT HIGHLY INFLAMATORY IMAGES TO THE JURY FROM OPENING STATEMENT AND THROUGHOUT THE TRIAL.**

### The Issue Involves Clearly Established Federal Law

As noted in the "Habeas Standards and AEDPA" section supra, "clearly established law" under the AEDPA includes legal principles and standards enunciated in Supreme Court decisions. To illustrate, The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees a fair trial and the United States Supreme Court has stated: "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Payne v. Tennessee, 501 U.S. 808, 825 (1991). In line with the principle that the Fourteenth Amendment prohibits introducing unduly prejudicial evidence to the jury, the Supreme Court has explained that: "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged . . . commonly, though not necessarily so, an emotional one." Old Chief v. United States, 519 U.S. 172 (1997) (Citations omitted.)

Petitioner claims that his right to due process and a fair trial as guaranteed by the Fourteenth Amendment, under principles determined by the United States Supreme Court, 28 U.S.C. §2254(d), were violated

50

by the trial judge's allowing gruesome images of the deceased to be displayed to his jury from before opening statement and throughout his trial. The constitutional violation had a substantial and injurious effect or influence in determining the jury's verdict as described by the United States Supreme Court in <u>Brecht</u> v. <u>Abrahamson</u>, 507 U.S. 619 (1993).

### The Constitutional Violation

As the Supreme Court noted in <u>Old Chief</u>, the danger of unduly prejudicial evidence is that it lures the jury into basing its decision on grounds other than those specific to the charges faced by the accused. With that in mind, Petitioner reminds this Court that absent the bargained for testimony of admitted rapist Gohagen and the hearsay evidence buttressing his testimony there was nothing to connect the DeJesus brothers to the rape and murder of the victim. <u>Nothing</u>.

This was a brutal offense wherein the victim, Margaret Midkiff, was raped both anally and vaginally and then kicked or otherwise beaten to death. In this state trial, images of the victim and her brutal treatment were a constant theme and one to such an extent that the images themselves became the most powerful evidentiary witness against Petitioner.[6] Over objection, the prosecution was permitted to display "blow-by-blow" photographs of the victim during opening argument. Displayed on a 20" x 30" poster board were three enlarged color

---

[6]     The images were filed by the Oakland County Prosecutor's office with the Michigan Court of Appeals pursuant to an order issued by that Court on July 31, 1988, thus are a part of the state court record in this case.

photographs of the deceased, nude and blood splattered, hands and feet bound, with a blood-soaked pillowcase covering her head. (T.T. 12-2-97 p.p. 14-15). The very first thing the jury saw as they entered the courtroom were these enlarged horrific photographs and the first thing they heard from the state prosecutor was:

> It's said that every picture tells a story. These pictures are no exception. They tell a story of terror, a story of horror, * * * already raped, vaginally and anally, now on a cold basement floor * * * kicked until blood streamed from her head, kicked to death by the men in those two chairs, George and Melvin DeJesus, two brutal and savage murderers who would deliver kick after kick, transforming a living, breathing human being, into that, Oakland County Morgue Number 554 for 1995 . . . (T.T. 12-2-97 p.p. 17-18).

Here Petitioner did *not* contest either the intent of the murderer or the fact of the rape, he claimed innocence and claimed that Gohagen implicated him in the offense for self-serving reasons. Throughout trial the brutally of the offense and images of that brutally provided a substitute for the lack of physical evidence against Petitioner. The enlarged photographs discussed above remained on display throughout the trial. Further, numerous other enlarged color photographs of the brutalized body of Midkiff from the crime scene were introduced (over objection) by Crime Lab Specialist Douglas Ferich. (T.T. 12-4-97 p.p. 55-70). Additionally, an extensive crime scene video was played for the jury that once again depicted the crime scene and the bound brutalized body of the deceased. (T.T. 12-4-97 p.p. 130-175).

52

Guaranteeing the emotional impact of the images, a single picture, posed with all the rest, shows a lovely blond woman, Margaret Midkiff, obviously happy, smiling for the camera. (T.T. 12-5-97 p.p. 42-43).[7] Continuing with her brutality theme first advanced in opening argument, the state prosecutor continued in closing by directing the jury's attention to the contrasting photographs in closing:

> By now, you should be chilled to the bone, because you should realize you've been seated in the same room with cold-blooded murderers. Two sadistic executions who transformed this pretty, smiling, forty-three year old women, into this, the most terrifying image * * * I told in opening argument that every picture tells a story * * * You know, the image on the top, smiling for the-three year old woman * * * the image on the bottom * * * When I first saw these photographs, I shuttered (sic) to think what type of person could do this to another human being. (T.T. 12-11-97 p.p. 3-4).

Adding to the parade of inflammatory images presented to the jury, the prosecution introduced (over objection) a photograph of George DeJesus holding guns pointed upward and glaring at the camera to "identify" the gun used by the DeJesus brothers the night of the offense. (T.T. 12-5-97 p.p. 56-59). Petitioner submits that whatever relevance the images may have had, that relevance was far exceed by the "unduly prejudicial" its effect in luring the jury into deciding guilt on something other than an emotional response. Old Chief v. United States, supra.

### The State Court Opinions

The state court record provides 2 rulings on this claim:

---

[7]   The defense attorneys admitted this photograph without objection.

1.   **THE STATE COURT OF APPEALS**. The  Michigan  Court  of

Appeals ruled as follows:

> Defendant next argues that the trial court abused its
> discretion in allowing the prosecutor to display the crime
> scene and autopsy photographs, as well as a photograph of
> Midkiff as she normally appeared, during her opening
> statements, and in later admitting the photographs in to
> evidence.   As we discussed above with respect to our
> resolution of this issue in codefendant Melvin DeJesus'
> appeal, the trial court did not abuse its discretion in allowing
> the prosecutor to display the photographs during opening
> statements or in admitting the photographs into evidence.
> While the crime scene and autopsy photographs were
> prejudicial by nature, they showed the extent of Midkiff's
> injuries and were relevant to proof of intent to kill.   The
> probative value of the photographs was not outweighed by
> the danger of unfair prejudice.  MRE 403; Mills, supra at 76.
> Similarly,  we  find  no  error  in  the  admission  of  the
> photograph of Midkiff as she normally appeared before the
> murder . . .
>
> Defendant next argues that the trial court erred in admitting
> the photograph of him holding a gun in each hand at arms
> length  and  pointed  directly  at  the  camera.   Defendant
> objected that admission of the photograph on the basis that
> it was not relevant and its probative value was substantially
> outweighed by the danger of unfair prejudice.  Based on the
> quality of the photograph and the position of the guns in the
> photograph,  it  is  unlikely  that  Gohagen  could  have
> accurately  identified  the  guns  in  the  photograph.   The
> minimal probative value is substantially outweighed by the
> danger  of  unfair  prejudice  from  the  photograph,  which
> defendant in a disturbing pose and fuels an inference that
> defendant is violent.  Thus, we conclude that the trial court
> abused  its  discretion  in  admitting  the  photograph  into
> evidence. However, and error in the admission of evidence is
> not a ground for reversal 'unless refusal to take this action
> appears to the court inconsistent with substantial justice.'
> MCR 2.163(A).  It is highly unlikely that the admission of the
> photograph affected the verdict.  Thus, we conclude that the
> error was harmless. People v. George Luis DeJesus, Docket
> No.209388, p.p. 9, 10 (June 18, 1999).

2.     **THE STATE SUPREME COURT**.   The Michigan Supreme
Court denied leave to appeal in a standard order. People v. George Luis
DeJesus, (May 31, 2000).

Since the Michigan Supreme Court denied Petitioner leave to
appeal, this Court must "look through" the unexplained denial by the
Michigan Supreme Court to the last reasoned decision as the basis for
the state court's judgment.   Ylst v. Nunnemaker, 501 U.S. 797 (1991);
Shackleford v. Hubbard, 243 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

This Court should therefore look to the Court of Appeals opinion
on this issue, People v. George Luis DeJesus, Docket No.209388, p.p. 9,
10 (June 18, 1999) with respect to the mandates of 28 U.S.C. §2254(d).

### The State Court Decisions Were Contrary To Or Unreasonably Applied Clearly Established Federal Law And Unreasonably Determined the Facts

The Michigan Supreme Court simply denied leave to appeal and
the Michigan Court of Appeals did not address the whether the
erroneous admission of the images violated Petitioner's federal rights.
Accordingly, this Court must conduct an independent review of the state
court record and determine whether the state court decision is contrary
to federal law, unreasonably applies clearly established law, or is based
on an unreasonable determination of the facts in light of the evidence
presented." Harris v. Stovall, 212 F.3d 940, 443 (6th Cir. 2000).

As noted above, the Fourteenth Amendment provides protection
against evidence that is "unduly prejudicial" as there is a danger that the

fact finder may find guilt based unacceptable grounds. <u>Payne</u> v. <u>Tennessee</u>, <u>supra</u>; <u>Old Chief</u> v. <u>United States</u>, <u>supra</u>. The Michigan appellate courts in this case have lost sight of this principle.

The *only* purpose served by admission of the images was to invoke an emotional response against Petitioner in the minds of the jurors' and distract them from dispassionately weighing the evidence. The Petitioner did **not** contest the nature and extent of the injuries and the Medical Examiner's testimony on the issue was cogent and clear. The images completed obscured the fact there was no evidence against the two brothers except the bargained for testimony of a brute who admitted to raping the victim and then cast the blame for her death on Petitioner.

What is required is for this court to examine images and decide if the violation had a substantial and injurious effect or influence in determining the jury's verdict. <u>Brecht</u> 507 U.S. at 637-638. This requires an analysis that is different than simply measuring the sufficiency of the evidence, it asks, "what effect the error had or reasonably may be taken to have had upon the jury's decision." <u>Kyger</u> v. <u>Carlton</u>, 146 F.3d 374, 382 (6th Cir. 1998).

Applying the above principles, Petitioner GEORGE LUIS DeJESUS, submits that this Court will find that it is compelled to grant a writ of habeas corpus in order to effectuate his constitutional right to a fair trial.

56

**IV. THE STATE PROSECUTOR'S REPEATED MISCONDUCT WAS SO EGREGIOUS THAT IT WHOLLY UNDERMINED THE TRIAL, RENDERED THE VERDICT UNRELIABLE, AND DEPRIVED PETITIONER OF DUE PROCESS AND AN IMPARTIAL TRIAL BY JURY AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION.**

### The Issue Involves Clearly Established Federal Law

The Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution encompass the right to a fair trial and prosecutorial misconduct may "so infect the trial with unfairness as to make the resulting conviction a denial of due process Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Berger v. United States, 295 U.S. 78 (1935); Viereck v. United States, 318 U.S. 236 (1943).

Petitioner claims that his right to due process and a fair trial as guaranteed by the Fifth and Fourteenth Amendments, as determined by the United States Supreme Court, 28 U.S.C. §2254(d), were violated by the conduct of the state court prosecutor. The misconduct arose to constitutional violation which had a substantial and injurious effect or influence in the proceeding as suggested by the United States Supreme Court in Brecht v. Abrahamson, 507 U.S. 619 (1993).

### The Constitutional Violations

The misconduct in this case was brazen, repeated, and prejudicial.

1. *Appeals to the Passions & Sympathy of the Jury.* (A) Attempting to garner sympathy for the victim, the prosecutor told the jury that the victim was conscious lying on the floor being kicked and not knowing

57

where the next blow could come from.  There was no evidence that the victim was conscious during the ordeal in the basement.  The medical examiner testified that it would take 15 – 20 minutes for death to occur from the injuries, but gave no testimony as to what consciousness a person would have with such death causing injuries. (B) The jury was told that the victim was a "pretty" woman who was venerable in her efforts to stop drinking and using drugs.  (T.T. 12-11-97 p.p. 3-4).

2.    *Appeals to the Fears & Prejudices of the Jury.*  (A) The prosecutor opened her comments by telling the jury that what they would hear would horrify them and "haunt your dreams for a long, long time." (T.T. 12-2-97 p. 29). (B) Likewise, in opening statement, she told the jury that the DeJesus brothers were "brutal and savage murderers" (T.T. 12-2-97 p.p. 3-4).  (C) Again, in opening statement she told the jury that they will have "looked into the face of evil, not once, but twice".  (T.T. 12-2-97 p. 29). (D) In closing, she told the jury that defendants were "pure evil" and "sadistic executioners".   All of this did nothing more than create a Stephen King-inspired image in the minds of the jurors, seeking to appeal to their fears and prejudices.

3.    *Appeals to Civic Duty.*  (A) The prosecutor indicated to the jury that it had a civic and moral duty to convict the defendants of murder and rape.  It was discussed for a full page of transcripts  (T.T. 12-11-97 p.p. 6-7) that there cannot be enough justice to properly punish the defendants.  A sample: "How could there be enough justice of the act of

58

savagery that we know now took place?  How could there ever be enough justice for the terror, panic, and pain suffered by Margaret in the last moments of her life?  And the unfortunate truth, there never could be  . . . there never could be enough justice for a woman maimed, mutilated, broken and bloody heap on the floor."  (B) Another sample: "[T]he are several facts that remained uncontested . . . unfortunately, the truth is that a human life has been ruthlessly and viciously extinguished and there will never be enough justice for that, never, never." (Id. p.p. 3-4).

These comments should not be independently viewed as isolated incidences, but rather as a part of a calculated strategy interwoven with the blatant use of inflammatory images in order to convictions based on emotion, fears, and prejudices in the absent of evidentiary proofs.

### The State Court Decisions Were Contrary To Or Unreasonably Applied Clearly Established Federal Law And Unreasonably Determined the Facts

The Michigan Supreme Court simply denied leave to appeal and the Michigan Court of Appeals did not address the whether the prosecutor's conduct violated Petitioner's federal rights.  Accordingly, this Court must conduct an independent review of the state court record and determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." Harris v. Stovall, 212 F.3d 940, 443 (6th Cir. 2000).

A prosecutor may not vouch for their evidence or express personal knowledge or belief concerning the evidence.  Viereck v. United States, 318 U.S. 236 (1943).  A prosecutor may not denigrate a defendant. Sizemore v. Fletcher, 921 F.2d 667 (6th Cir. 1990).  A prosecutor may not appeal to the jury's prejudices, fears, values, or concerns about social issues.  United States v. Young, 470 U.S. 1 (1985); United States v. Ebens, 800 F.2d 1422 (6th Cir. 1986).  A prosecutor may not invite "the jury to conclude that . . . justice is only done when a conviction is obtained."  United States v. Friedman, 909 F.2d 705, 709 (2nd Cir. 1990).

The reason for the above legal principles is that such actions can easily inflame the jury, thus directing attention away form the evidence presented at trial.   In this state court prosecution the prosecutor abandoned these rules and sought a conviction based on emotion.  The trial tactic of conviction-by-emotion began with the displaying of horrific photographs can concluded with a plea for justice for the victim.   While effective, it was a strategy that cannot be sanctioned by this Court.

Applying the above principles, Petitioner GEORGE LUIS DeJESUS, submits that this Court will find that it is compelled to grant a writ of habeas corpus in order to effectuate his constitutional right to a fair trial.

V.   **PETITIONER WAS DENIED HIS CONSTITUTIONAL
     RIGHT TO DUE PROCESS WHEN THE TRIAL
     COURT DENIED THE MOTION FOR DIRECTED
     VERDICT WHRE THERE WAS INSUFFICIENT
     EVIDENCE TO ESTABLISH THE CHARGES.**

### The Issue Involves Clearly Established Federal Law

The Due Process Clauses of the Fifth and Fourteenth Amendments
to the United States Constitution encompass the right to Due Process of
law.    These constitutional due process clauses also guarantee a
defendant the right not to be convicted except on proof beyond a
reasonable doubt on each element of the offense. Jackson v. Virginia,
443 U.S. 30 (1979). Petitioner claims that his right to due process as
guaranteed by the Fifth and Fourteenth Amendments, as determined by
the United States Supreme Court, 28 U.S.C. §2254(d), were violated
when the state trial court denied his motion for a directed verdict when
there was insufficient evidence to support the charges.

### The Constitutional Violation

Petitioner was charged with first-degree (premeditated) murder,
first-degree (felony) murder, criminal sexual conduct in the first degree,
and felony firearm.  He was convicted of all charges.  The murder charges
require proof of a death caused by the defendant.  However, the intent
requirement is different for each.  See M.C.L. 750.316(1)(a) & (b).

To prove the first of the above charges, premeditated murder, the
prosecutor presented Gohagen's testimony, adding to it inadmissible
hearsay, from other witnesses.  The testimony of Brandon Gohagen was

61

the only real evidence against the defendants. There was no physical evidence, no DNA, and no other direct evidence explaining Midkiff's death. As to George DeJesus, Gohagen's testimony established that: (1) they were drinking and smoking marijuana in the (nonexistent) "screen tent" on the side of the DeJesus house on the nigh of the killing; (2) Melvin said he was going to "mess with Margaret"; (3) Melvin went to the house and whistled for them to come, which they did; Melvin opened the Margaret's bedroom door and walked in; (5) Melvin woke her up by grabbing her hair and telling her to "wake up, bitch"; (6) Brandon and George stood in the doorway of the bedroom; (7) Brandon took his gun off of his waist, he did not know where Melvin's gun was, the testimony does not indicate that George had a gun; (8) Melvin told Midkiff to take her clothes off. (T.T. 12-5-97 p.p. 56-61). (9) Melvin told Brandon to have sex with Midkiff and he tried, but could not get erect; (10) Melvin told Midkiff to perform oral sex on Brandon at which point, Brandon gave his gun to George but did not testify that George did anything but hold on to it, and Brandon then penetrated Midkiff anally and vaginally, as Midkiff told him "not to listen to Melvin". (T.T. 12-5-97 p.p. 63-66). (11) George started to "bind her up" at her hands and feet when Brandon completed the rape and Melvin helped. (TT 12-5-97 p.p. 66-67). (12) George picked her up and carried her out of the bedroom to the basement, (TT 12-5-97 p.p. 67-70), and (13) Melvin pushed Margaret over and began stomping

her as she lay on the floor, and George "threw a couple kicks," (TT 12-5-97 p.p. 70-73).

Viewing this evidence with favor to the prosecution, the first-degree murder conviction fails. There is no evidence of premeditation. If it is to be believed that George carried her out of the bedroom into the basement, this is insufficient. It lacks any showing of premeditation, defined by Michigan law as thinking about a killing before hand and measuring and evaluating the major facets of a choice or problem undisturbed by hot blood. People v. Oster, 67 Mich. App. 490, 496-497 (1975). In Gohagen's version of events, George stood by as his brother directed Gohagen to rape Midkiff. There was no discussion of killing whatsoever. Certainly the allegation that George tied her up may be seen to mean he wanted to subdue her only, as does his carrying her to the basement. Nor does "throwing a couple of kicks", indicate a plan to kill. There is no indication that these general acts indicated a plan to kill. Rather, if the plan was to kill her, they could have easily done so with the guns they allegedly carried. Instead the kicked her as they would do in a fight. Although this is brutal, it does not establish premeditation and deliberation. People v. Oster, supra at 497-498 (even where defendant cleaned a knife after stabbing the victim, there was no showing of premeditation and deliberation).

Felony murder was also not sufficiently proved by the State. As with all murder, malice is a required showing. This is true whether the

63

defendant is the principle or an aider and abetter. People v. Aaron, 409 Mich. 672 (1980). The intent for felony murder requires an intent to kill, an intent to do great bodily harm, or to knowingly create a very high risk of death or great bodily harm, knowing that death or such harm would be the likely result of one's actions. Aaron; People v Lyles, 148 Mich. App. 583 (1986). Here, Petitioner's alleged action of "throwing a couple kicks" fails to meet this criterion. Even if Brandon is believed, a couple of kicks is not equivalent to such dangerous behavior that George would know that the likely result of so doing is death.

Even more important is that the proofs were insufficient for a finding of the underlying felony, criminal sexual conduct first degree by aiding and abetting. A guilty verdict on this charge requires adequate proof of penetration by force or coercion with an aggravating circumstance delineated in the statute, one of which is use of a weapon. M.C.L. 750.520(b). Throughout Brandon's account of what transpired in the bedroom there was no evidence that George did anything with the gun handed to him by Brandon Gohagen to encourage or assist in the commission of the sexual assault. (TT 12-5-97 p.p. 63, 115-116).

If this Court harbors "grave doubt" as to whether the evidence was sufficient to support *any* of the charges the writ of habeas corpus should be granted. O'Neal v. McAninch, 513 F.3d 432, 435 (1995).

**VI.   THE MICHIGAN STATE COURTS DENIED PETITIONER DUE PROCESS BY (A) REFUSING TO PROVIDE AVAILABLE DNA BIOLOGICAL SAMPLES FOR INDEPENDENT TESTING AND (B) IN FAILING TO CONDUCT A HEARING WITH RESPECT TO A POST-APPEAL EXPERT FORENSIC SCIENTIST'S REPORT DISPUTING THE STATE'S EVIDENCE ON THE CRITICAL ELEMENT OF THE MURDER CHARGE, AFTER REFUSING TO APPOINT AN EXPERT AT TRIAL.**

## NECCESSITY FOR FACT-DEVELOPMENT PROCEDURES

The instant petition for a writ of habeas corpus is Petitioner's last opportunity to ensue that the process by which the state obtained his convictions accords with federal law and is, in fact, his last meaningful opportunity to appeal to any judicial authority.[8]   Therefore, it is imperative that this Court not only provides Petitioner with a forum to present the *legal* bases of his claims, but also to develop *factual* bases to support his claim of innocence and to support his claim that the convictions were obtained in violation of federal law.   At the very least, the Due Process Clause of the Fourteenth Amendment guarantees a meaningful opportunity to be heard in a meaningful way.

As noted in the extensive Statement of Facts, there was no physical evidence against the DeJesus brothers.[9]   Their convictions and

---

[8]      M.C.R. 6.502(G) limits Michigan State prisoners to one and only one post-appeal review process absent a retroactive change in the law or newly discovered evidence not available earlier.  28 U.S.C. §2244(a) likewise precludes a successive or second habeas petitioner absent the petitioner overcoming significant hurdles.

[9]      Counsel recognizes that she has filed an extremely lengthy brief and apologizes for any inconvenience it may have caused this Court.  However, in mitigation, the trial proceedings were lengthy and counsel believes that this Court will benefit from the paucity of direct evidence (other than that of Gohagen) and that without extensive quotations from the state prosecutor it would be difficult for the Court to appreciate the role emotion and fear played in this state court prosecution.

subsequent sentences of life in prison are entirely sustained by the testimony of codefendant Brandon Gohagen that the two brothers were present and participated in the offense. The role of Gohagen in securing Petitioner's convictions for these horrific offenses cannot be minimized. It must be keep in mind that since the DeJesus brothers denied *any* participation in the crimes or to even being present at the scene when Gohagen admittedly raped the victim, the jury was presented with diametric choices: (1) accept the state's theory of full involvement in the crimes based on Gohagen's testimony; or (2) reject the state's theory and accept the defense theory of non-involvement based on Gohagen's testimony. Therefore, any dilution or contradiction of Gohagen's version of evens by physical or expert evidence would have had a greater result than that found in many other cases and would have likely tipped the jury away from accepting the already questionable testimony of Gohagen.

### FACT-DEVELOPMENT PROCEDURES REQUESTED

Fact-development is required for 2 specific reasons:

1.   **DNA REQUEST**. At trial, Gohagen admitted to raping the victim orally, vaginally, and anally, but denied kicked, hitting, tying her up or engaging in **any** combative involvement with the victim. (T.T. 12-5-97 p.p. 63, 65-68, 70). Gohagen's claims that the victim meekly submitted to his sexual assaults and that following the sexual assaults he was never in close proximity to the victim again. (T.T. 12-5-97 p.p. 68-70; T.T. 12-11-97 p. 54). The defense argued that Gohagen committed

the rape and murder and that he committed them alone. (T.T. 12-11-97 p. 55). Gohagen denied having any scratches on his person immediately following the rape and murder. (T.T. 12-5-97 p.p. 134-135). The defense presented the testimony of Jennifer Jones who told the jury that she had sex with Gohagen shortly after the rape and murder and that he had noticeably been scratched. (T.T. 12-9-97 p.p. 85-86). In closing argument the prosecution dismissed her testimony regarding scratch marks on Gohagen: "She's just like everybody else, those girls don't know what happened." (T.T. 12-11-97 p. 70).

Scratch marks on George DeJesus, however, were not so easily dismissed, according to the prosecutor "[it was] George who did the carrying, George is the one who would have had the scratches, George and perhaps Brandon." (T.T. 12-11-97 p. 26). In fact, the prosecutor exploited the scratches on Petitioner when she told the jury "We know George DeJesus got some scratches, but * * * the amount of material found under the nails, they got a little bit of blood, but microscopically, it wasn't even enough to test for DNA." (T.T. 12-11-97 p. 25).

Blood traces were in fact found under the fingernail clippings taken from the victim by the coroner when examined microscopically. However, according to Michigan State Police forensic scientist David Woodford, the amount of blood present under the fingernails of the victim was insufficient to warrant sending out of DNA testing. He did

state his opinion that you "have to gouge somebody pretty good to draw blood and for the blood to stay there. (T.T. 12-8-97 p.p. 97, 104-106).

Based on the trial court record a request to obtain the biological samples for DNA testing was made by Petitioner pursuant to a post-conviction Michigan statute (M.C.L. 770.16) providing for such a request. In making his state court argument, Petitioner asserted and requested a hearing to establish actual innocence, citing federal case law for the proposition that the Eight and Fourteenth Amendments protects against incarcerating innocence defendants. The state courts failed to address the federal aspects of the actual innocence claim and held that Petitioner failed to meet the standards of the state statute in denying the request.

As argued <u>infra</u>, the evidence was insufficient to support the convictions. Not only would DNA testing establish that the DNA found under the fingernails of the victim was that of Gohagen, not Petitioner's, diminish the credibility of Gohagen to the point of affecting the jury's determination of guilt, but would likewise diminish the state court finding that the evidence supporting conviction was sufficient.

This Court has the authority to compel the production of the biological samples and permit Petitioner to do what the state courts refused to do: Permit him to establish innocence. Rule 6(a) of the Rules governing §2254 Cases expressly provides for discovery in habeas proceedings if he petitioner shows good cause for discovery. According to the Commentary to Rule 6:

> [W]here specific allegations before the court show reason to
> believe that the petitioner may, if the facts are fully
> developed, be able to demonstrate that he is confined
> illegally and is therefore entitled to relief, it is the duty of the
> court to provide the necessary facilities and procedures for
> an adequate inquiry. (See also East v. Scott, 55 F.3d 996,
> 1001 (5th Cir. 1995) (court abuses discretion denying
> discovery requests when discover is "indispensable to a fair,
> rounded, develop of the material facts.")

Obtaining DNA materials from the state for testing in federal court is within the parameters of Rule 6(a) and within the discretion of this Court. See, e.g., Toney v. Gammon, 79 F.3d 693 (8th Cir. 1996). In Toney the Eight Circuit Court found that the District Court abused its discretion by failing to grant a motion to conduct DNA testing of biological samples where evidence of the samples was introduced at trial but such testing was not available at the time of trial and the petitioner claimed that the testing would exonerate him of the crimes.

Toney is quite similar to the circumstances here. Petitioner has shown "good cause" for purposes of Rule 6(a) and the biological samples (if not themselves used at trial) comprised a component of the case against him and if tested could very well provide a basis for exoneration.

Petitioner is not asking this Court to order discover and thereafter provide funds to the DNA testing. Here, as in state courts, Petitioner is seeking access to the materials and will pay any expense for the testing that he believes will exonerate him of these horrific crimes.

2.   **EVIDENTIARY HEARING REQUEST**.   Petitioner's attorney requested appointment of "a forensic pathologist or medical examiner to

examine the autopsy report . . . for purposes of assisting the defense in determining independently of the ME's evaluation, the time and death of this particular decedent." The court denied the request.  (M.T. 11-26-97 p.p. 25-27).  During trial the prosecution unequivocally theorized to the jury that Defendant's liability for the premeditated slaying of the victim stemmed from his repeated kicking of the victim:

- **OPENING STATEMENT**: "Kick after kick . . . she would die on that floor . . . kicked to death by the men in these two chairs, George and Melvin DeJesus . . .who would deliver kick after kick, transforming a living, breathing human being into that, Oakland County Morgue Number 554." (T.T. 12-2-97 p.p. 17-18).

- **CAUSE OF DEATH**:

  Q. Doctor, the injuries that you noted on the person of Margaret Midkiff, where those consistent with her having been basically kicked to death?

  A.    Yes, it is.

- **CLOSING ARGUMENT**: "The last thing she'd feel, excruciating pain as kick, after kick, after kick, after kick . . . When a women is stripped, bound, taken to a cold dark basement and kicked to death, that is not a tragedy, that is a crime.   And the crime is called first degree premeditated murder." (T.T. 12-11-97).

- **TRIAL TESTIMONY OF BRANDON GOHAGEN**.  Accomplice witness Brandon Gohagen was not only the main witness against Defendant, he provided the <u>only</u> evidence connecting Defendant to the slaying of the Margaret Midkiff.  After informing the jury that he (Gohagen) had raped the victim, Gohagen testified that George DeJesus carried the victim to the basement of the home where George and Melvin DeJesus kicked her to death. (T.T. 12-5-97 p.p. 72-73).

Based on the trial court record Petitioner sought and obtained an expert evaluation for the autopsy report of the victim post-conviction. The evaluation of the autopsy report and other relevant evidence was

70

undertaken by Dr. Werner Spitz, a board-certified pathologist and well known forensic pathology expert.  Dr. Spitz's evaluation states, in part:

> 2. I have reviewed relevant evidence in this case and formed an opinion as to the injuries and cause of death of the deceased.  It is as follows:
>
>> a) The deceased was never kicked.
>>
>> b) The deceased was stomped, but she was stomped only a single time.  There is no evidence that she was stomped repeatedly.
>>
>> c) The single stomp to the head was the case of death.

The opinion of Dr. Spitz cannot be reconciled with prosecution's theory of criminal liability for premeditated murder.  Both cannot be true. If Dr. Spitz's opinion is accepted as true, then the prosecution's theory of guilt on the elements of premeditation and deliberation vanishes in this case, since premeditation and deliberation require a lapse of time sufficient to give the mind time to calculate the purpose and intent of the killing. The opinion of Dr. Spitz cannot be reconciled with the testimony of Brandon Gohagen.  Both cannot be true.  If Dr. Spitz's opinion is accepted as true, then the self-serving testimony that he (Gohagen) raped the victim, but Defendant caused her death by his repeated kicking is a lie.

Pursuant to the provisions of MCR 6.500 et seq. Petitioner sought an evidentiary hearing based on Dr. Spitz's evaluation arguing that the state failed its burden to establish the causation element for murder.  IN making his request, Petitioner referenced federal case law and the U.S. Const. Amends. VIII & XIV, stating that it is a miscarriage of justice to

71

incarcerate a person who is actually innocent. The state court refused to address the federal aspects of the claim and found the issue procedurally bar, ignoring federal law holding that actual innocence excuses procedural bars. Schulp v. Delo, 513 U.S. 298, 327-329 (1995).

Whether or not the victim was kicked to death by multiple blows was disputed in state courts on collateral appeal, as was the sufficiency of the evidence supporting the convictions on direct appeal. Petitioner diligently sought a hearing at all state court levels and was refused. An evidentiary hearing should be held in federal court when the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair hearing." Sawyer v. Hofbauer, 299 F.3d 605, 610 (6th Cir. 2002).

No fact can be more relevant than causation in a murder trial. The manner by which the victim was slain is in dispute. The state refused to hold any hearing, let alone a full and fair hearing. Petitioner now seeks such a hearing to adduce facts sufficient to justify habeas relief.

### Summary

Petitioner has been convicted of horrific crimes to which he has claimed innocence. The convictions are supported by the thinnest of evidence. Petitioner seeks DNA testing (at his own expense) and a hearing at which he can disprove the State's claim of causation in this murder trial. This Court should grant these requests.

## RELIEF SOUGHT

**WHEREFORE**, Petitioner GEORGE LUIS DeJESUS respectfully

requests that this Honorable Court grant the following relief:

a. That Respondent be required to appear and answer the allegations of this Petition;

b. That this Court grant oral argument, grant discovery, and/or hold evidentiary hearings as necessary and requested in this matter;

c. That this Court grant such other, further and different relief as the Court may deem just and proper under the circumstances; and

d. That after full consideration, this Court relieves Petitioner DeJesus of the unconstitutional restraint on his liberty.

Respectfully submitted,

LAURA KATHLEEN SUTTON (P40775)
Attorney for Petitioner DeJesus
PO Box 388
Manchester, Michigan 48158
(734) 428-7445

Dated: April 26, 2004.

73

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE LUIS DeJESUS,

        Petitioner,

  -vs.-

BLAINE C. LAFLER, Warden,

        Respondent.

_____/

Laura Kathleen Sutton (P40775)
Attorney for Petitioner DeJesus

_____/

Civil Action No. **04  71553**

Hon. GEORGE CARAM STEEH

MAGISTRATE JUDGE SCHEER

**FILED**

APR 2 9 2004

CLERK'S OFFICE
U.S. DISTRICT COURT
ANN ARBOR, MI

### PROOF OF SERVICE

Laura Kathleen Sutton, attorney at law, hereby certifies that on April __2 6__, 2004, she personally filed with this Court the following: Civil Cover Sheet, Petition for Writ of Habeas Corpus Brief In Support Of Writ Of Habeas Corpus, along with the Proof of Service, and she also mailed one (1) copy of same to:

    Mike Cox, Michigan Attorney General
    Habeas Corpus Division
    One Michigan Avenue, 120 N. Washington
    PO Box 30212
    Lansing, MI 48909

                Respectfully submitted,

                LAURA KATHLEEN SUTTON (P40775)
                Attorney for Petitioner DeJesus
                PO Box 388
                Manchester, Michigan 48158
                (734) 428-7445

Dated: April __2 6__, 2004.