UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE LUIS DeJESUS,

                Petitioner,

v.                                       CASE NO. 04-CV-71553-DT
                                       HONORABLE GEORGE CARAM STEEH

BLAINE C. LAFLER,

                Respondent.
_____/

**OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS**

      Petitioner George Luis DeJesus has filed an application for the writ of habeas corpus

under 28 U.S.C. § 2254. Having reviewed the pleadings and record, the Court concludes that

Petitioner's claims lack merit and do not entitle him to relief. Therefore, his habeas petition will

be denied.

**I. Background**

      On December 11, 1997, a circuit court jury in Oakland County, Michigan found both

Petitioner and his brother Melvin DeJesus guilty of premeditated murder, felony murder,

criminal sexual conduct in the first degree, and three counts of possession of a firearm during the

commission of a felony (felony firearm). The convictions arose from the rape and brutal beating

of the DeJesus' neighbor. There was no physical evidence connecting Petitioner or his brother to

the crimes. The primary evidence against them came from Brandon Gohagen, who testified that

he sexually assaulted the victim at Melvin DeJesus' command, but the two DeJesus brothers

subsequently kicked the victim in the upper body and left her tied up and moaning on her

basement floor. Petitioner's defense was that he was not present when the crimes were

committed and that Brandon Gohagen alone raped and murdered the victim.  The jury was unpersuaded by the defense and convicted both Petitioner and Melvin DeJesus as charged.

Because there was only one victim, the trial court vacated one first-degree murder conviction and the attendant felony firearm count.  The court then sentenced Petitioner to  two concurrent terms of two years in prison for each felony firearm conviction, followed by concurrent terms of life imprisonment for the murder and criminal sexual conduct convictions.

Petitioner raised his first five habeas claims in an appeal of right.  The Michigan Court of Appeals vacated Petitioner's criminal sexual conduct conviction, because it was the predicate felony for the felony murder conviction and violated double jeopardy principles.  The court of appeals also vacated the felony firearm conviction that was related to the criminal sexual conduct conviction. The court of appeals affirmed Petitioner's other convictions, but remanded the case so that the judgment of sentence could be modified to reflect that Petitioner was convicted of one count of first-degree murder supported by two theories:  premeditated murder and felony murder. *See People v. DeJesus*, No. 209388 (Mich. Ct. App. June 18, 1999) (unpublished opinion).  On May 31, 2000, the Michigan Supreme Court denied Petitioner's subsequent application for leave to appeal.  *See People v. George DeJesus*, 462 Mich. 866; 616 N.W.2d 687 (2000) (table).

Petitioner raised his sixth and final habeas claim in a motion for relief from judgment filed on May 30, 2001.  The trial court denied his motion, and the Michigan Court of Appeals denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D) or MCL 770.16(3)."  *People v. DeJesus*, No. 246201 (Mich. Ct. App. July 18, 2003).  The Michigan Supreme Court also denied leave to appeal.  *See People v. George DeJesus*, 469 Mich. 1000; 675 N.W.2d 591 (2004) (table).

2

On April 26, 2004, Petitioner filed his habeas corpus petition through counsel.  His grounds for relief read:

I.      The erroneous admission of irrelevant and highly prejudicial testimony alleging Petitioner was a member of a gang deprived him of his due process right to a fair trial under the Federal Constitution.

II.     The state trial court erred by allowing inadmissible hearsay evidence in at trial, depriving Petitioner of his due process right to a fair trial.

III.    The state trial court deprived Petitioner of his due process rights to a fair trial by permitting the prosecution to present highly inflammatory images to the jury from opening statement and throughout trial.

IV.     The state prosecutor's repeated misconduct was so egregious that it wholly undermined the trial, rendered the verdict unreliable, and deprived Petitioner of due process and an impartial trial by jury as guaranteed by the Fifth and Fourteenth Amendments to the Federal Constitution.

V.      Petitioner was denied his constitutional right to due process when the trial court denied the motion for a directed verdict where there was insufficient evidence to establish the charges.

VI.     The Michigan state courts denied Petitioner due process by (A) refusing to provide available DNA biological samples for independent testing and (B) in failing to conduct a hearing with respect to a post-appeal expert forensic scientist's report disputing the State's evidence on the critical element of the murder charge, after refusing to appoint an expert at trial.

Respondent urges the Court to deny the habeas petition on the grounds that the claims lack merit or are procedurally defaulted.  Procedural default is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, __ U.S. __, __, 126 S. Ct. 1032 (2006), and "federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits." *Hudson v. Jones*,

3

351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)), *cert. denied*, 543 U.S. 880 (2004).  The Court will proceed directly to the merits of Petitioner's claims, using the following standard of review, because it is efficient to adjudicate Petitioner's claims than to analyze them under the procedural default doctrine.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of the claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original).

4

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, review is conducted in light of the law as it existed at the time of the final state court decision, *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L. Ed.2d 334 (1989), unless an intervening constitutional decision announces a "watershed" rule of criminal law with implications for the fundamental fairness of the trial proceeding. *Caspari v. Bohlen,* 510 U.S. 383, 396, 114 S.Ct. 948, 127 L. Ed.2d 236 (1994).

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III.  Discussion

### A.  Testimony about a Gang

The first habeas claim alleges that the erroneous admission of irrelevant and highly prejudicial testimony that Petitioner was a member of a gang deprived him of his constitutional right to a fair trial. The Michigan Court of Appeals determined that the brief mention of gang involvement did not prejudice Petitioner's right to a fair trial.

"Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)), *cert. denied*, 543 U.S. 892 (2004). Evidence of gang-related activity can amount to constitutional error when the evidence is not relevant to any issue being decided in the proceeding. *Dawson v. Delaware*, 503 U.S. 159, 160 (1992).

The trial court ruled before trial that there would be no mention of gangs (Tr. Nov. 26, 1997, at 17-18), and the prosecutor cautioned her witnesses not to mention gangs (Tr. Dec. 2, 1997, at 105). However, when the prosecutor asked Jeremy Wilkes whether he "hung around" with the defendants, Jeremy responded that Petitioner and Melvin DeJesus were members of a

5

gang and that he did not want to associate with them because he knew he would get into trouble if he did. (*Id*. at 67-68.) The statement was a brief comment in a lengthy trial where the evidence against Petitioner was substantial. No further mention was made of the defendants' membership in a gang. Therefore, the evidentiary error did not render the trial fundamentally unfair so as to deprive Petitioner of his constitutional right to due process.

### B. Hearsay

The second habeas claim alleges that the trial court erred by admitting (1) Terrell Gholston's testimony regarding Brandon Gohagen's comments about the murder and (2) Angela Rodriguez' testimony that the victim did not like Melvin DeJesus and did not want her son associating with the defendants because they were trouble. Petitioner contends that the disputed testimony was inadmissible hearsay.

The Michigan Court of Appeals noted that Gohagen's statements to Gholston were made before Gohagen was offered a plea bargain. The court of appeals concluded that Gohagen's statements were admissible under Michigan Rule of Evidence 801(d)(1)(B) as a prior consistent statement to rebut defense counsel's charge that Gohagen's testimony was influenced by the plea agreement. The court of appeals declined to review Petitioner's claim about Angela Rodriguez' testimony, because Petitioner did not object to the testimony at trial and because the testimony did not affect Petitioner's substantial rights.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Mich. R. Evid. 801(c). Although hearsay generally is not admissible in state court, Mich. R. Evid. 802, the alleged violation of state law is not a basis for habeas relief. "In conducting habeas review, a federal

6

court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam )." *Estelle v. McGuire*, 502 U.S. at 68.

Petitioner attempts to assert his claim under the Sixth Amendment, which "guarantees to a criminal defendant the right 'to be confronted with the witnesses against him.' U.S. Const. amend. VI." *Danner v. Motley*, 448 F.3d 372, 377 (6th Cir. 2006). The Amendment applies to state court proceedings, *Pointer v. Texas*, 380 U.S. 400, 403 (1965), and it provides a criminal defendant with "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987).

The Confrontation Clause does not prohibit the admission of all hearsay statements against a criminal defendant. *Idaho v. Wright*, 497 U.S. 805, 813 (1990). Hearsay statements are admissible if the declarant is unavailable and his or her statement "bears adequate 'indicia of reliability.'" *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).[1] Reliability can be inferred when "the evidence falls within a firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." *Id*.

### 1. Terrell Gholston

Brandon Gohagen was the declarant in Terrell Gholston's hearsay testimony. Gohagen testified at Petitioner's trial and was subject to cross-examination. Thus, Gholston's testimony about Gohagen's comments to him did not violate the Confrontation Clause.

---

[1] *Roberts* was abrogated in part by *Crawford v. Washington*, 541 U.S. 36 (2004). The Court need not determine whether Petitioner's statements were admissible under *Crawford*, because *Crawford* was decided after Petitioner's conviction became final, and it does not apply retroactively on habeas review. *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005).

### 2.  Angela Rodriguez

Angela Rodriguez' hearsay testimony concerned the deceased victim's comments about the defendants.  The victim was unavailable as a witness due to her death, and Ms. Rodriguez' hearsay testimony about the victim's comments was admitted under the "existing state of mind" exception to the hearsay rule.  *See* Mich. R. Evid. 803(3).

> The state-of-mind exception has been recognized by the Supreme Court . . . for over a century.  *See Mut. Life Ins. Co. v. Hillmon,* 145 U.S. 285, 295-96, 12 S.Ct. 909, 36 L. Ed. 706 (1892) (admitting letter stating that declarant intended to travel to a certain destination with another); *Commonwealth v. Trefethen,* 157 Mass. 180, 31 N.E. 961, 964-65 (1892) (admitting statement of declarant's intention to commit suicide).  Indeed, "the exception exists in every jurisdiction in the country, whether by statute, court rule, or common law tradition," *Hayes v. York,* 311 F.3d 321, 325 (4th Cir. 2002), and has been codified in the Federal Rules of Evidence, *see* Fed. R. Evid. 803(3).  The premise for admitting hearsay statements evidencing state-of-mind is that such statements are reliable because of their "spontaneity and [the] resulting probable sincerity."  *McCormick on Evidence,* § 274 (5th ed.1999).  Thus, the rationale for the state-of-mind exception is similar to the rationale for the other hearsay exceptions that the Supreme Court has recognized as "firmly rooted."  *See Lilly,* 527 U.S. at 127, 119 S.Ct. 1887 (stating that firmly rooted exceptions are those that permit the admission of declarations "made without motive to reflect on the legal consequences of one's statements and in situations that are exceptionally conducive to veracity").

*Horton v. Allen*, 370 F.3d 75, 85 (1st Cir. 2004), *cert. denied*, 543 U.S. 1093 (2005).  Because the state-of-mind exception is a firmly rooted exception to the hearsay rule, *see id*., Angela Rodriguez' testimony concerning the deceased victim's comments to her did not violate Petitioner's right of confrontation.

### C.  Inflammatory Photographs

The third habeas claim alleges that the trial court deprived Petitioner of his right to a fair trial by permitting the prosecution to present highly inflammatory images to the jury during her opening statement and throughout trial.  The images consisted of gruesome photographs of the

8

victim and a single photograph of Petitioner holding a gun in each hand.

### 1.  The Gruesome Photographs

The Michigan Court of Appeals determined that the trial court was correct in allowing the prosecutor to display and admit photographs, because the photographs were relevant to prove the extent of the injuries and the intent to kill.  The court found that the probative value of the photographs was not outweighed by the danger of unfair prejudice.  This Court finds that Petitioner's argument about gruesome photographs fails to state a constitutional claim and, therefore, is not cognizable on habeas review.  *Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002) (citing *Gerlaugh v. Stewart,* 129 F.3d 1027, 1032 (9th Cir.1997) (holding that the admission of gruesome photographs of the decedent did not raise "the spectre of fundamental fairness such as to violate federal due process of law")).

### 2.  The Photograph of Petitioner with Two Guns

The state court of appeals found the minimal probative value of the photograph of Petitioner to be substantially outweighed by the danger of unfair prejudice because the photograph depicted Petitioner in a disturbing pose and because it fueled an inference that he was violent.  The court nevertheless found the error to be harmless because its admission likely did not affect the verdict.

In *Chapman v. California*, 386 U.S. 18, 24 (1967), the Supreme Court held "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."   When a state court has found an error to be harmless, a federal habeas court must apply the deference due under 28 U.S.C. § 2254(d) and ask

whether the state court's harmless-error decision was contrary to, or an unreasonable application of, *Chapman*. *Eddleman v. McKee*, __ F.3d __, __, No. 05-1493, slip op. at 2 (6th Cir. Dec. 14, 2006).

Brandon Gohagen testified that the photograph of Petitioner holding a gun in each hand was taken in 1995, the year in which the crimes occurred. Gohagen identified the guns in the photograph as ones belonging to him (Gohagen) and Melvin DeJesus. Gohagen did not know the exact date when the photograph was taken, and there was no testimony that the photograph reflected Petitioner during the incident in question. In light of the other evidence against Petitioner, including testimony that Petitioner held Gohagen's gun during the sexual assault, bound the victim's hands and feet, and participated in kicking her, the photograph was harmless beyond a reasonable doubt. Therefore, the state court's decision was not contrary to, or an unreasonable application of, *Chapman*.

### D.  The Prosecutor

The fourth habeas claim alleges prosecutorial misconduct. Petitioner alleges that the misconduct was so egregious that it wholly undermined the trial, rendered the verdict unreliable, and deprived him of due process and an impartial jury.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert.* denied, 544 U.S. 921 (2005). To prevail on a claim of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's remarks, taken in the context of the entire trial, were sufficiently prejudicial and infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 643 (1974). It is not enough to show that the prosecutor's

conduct or remarks were improper or even universally condemned.  *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).  "On habeas review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct was 'so egregious as to render the entire trial fundamentally unfair.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

When reviewing claims of prosecutorial misconduct, courts first ask whether the prosecutor's conduct or remarks were improper.  *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006).  If the conduct or remarks were improper, the court must consider whether the improper acts were so flagrant as to warrant reversal.  *Id*. at 516.  The Sixth Circuit has identified four factors to consider when analyzing conduct for flagrancy:  "1) the likelihood that the remarks would mislead the jury or prejudice the accused; 2) whether the remarks were isolated or extensive; 3) whether the remarks were deliberately or accidentally presented to the jury; [and] 4) whether other evidence against the defendant was substantial."  *Gall v. Parker,* 231 F.3d 265, 311-12 (6th Cir. 2000), *overruled on other grounds by Bowling*, 344 F.3d at 501 n.3.

"[S]tate courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'"  *Slagle*, 457 F.3d at 516 (alteration in original) (quoting *Donnelly*, 416 U.S. at 645).  Moreover,

> [i]n determining whether prosecutorial misconduct mandates habeas relief, [courts] apply the harmless error standard.  *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).  An error is found to be harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993).

*Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.), *cert. denied*, __ U.S. __, 126 S. Ct. 163 (2005).

### 1.  Appeals to the Jury's Passions and Sympathy

Petitioner alleges that the prosecutor attempted to garner the jurors' sympathy for the victim.  The prosecutor stated in her closing argument that the victim was a pretty woman who had her personal demons, but had gotten control of her life.  The prosecutor also stated  that the victim laid blindfolded on a cold floor, not knowing from which direction the next blow would come.  (Tr. Dec. 11, 1997, at 3-4 and 6.)  Petitioner contends that there was no evidence the victim was conscious during the beating.  The Michigan Court of Appeals ruled that the prosecutor's comments and arguments were not improper appeals to the jury for sympathy and that the remarks were supported by the evidence and reasonable inferences therefrom.

The victim was discovered with a pillow case over her head and with her hands and feet bound.  Brandon Gohagen testified that he thought the defendants' kicks were directed at the victim's upper body and that, at first, the victim kept talking, but after a few kicks, she began to moan.  She was moaning when the men left the house.  (Tr. Dec. 5, 1997, at 72-74 and 82.)  It was reasonable to infer from the testimony that the victim was conscious for at least some of the beating.

There also was evidence that the victim had struggled to overcome a substance abuse problem.  Her children testified that the victim was a recovering alcoholic and had been sober for five years at the time of her death.  *See* Tr. Dec. 2, 1997, at 46 (Angela Rodriguez' testimony); *id*. at 79 (Jeremy Wilkes' testimony).  Thus, there was a factual basis for the prosecutor's comment that the victim had personal demons, but had gotten her life under control.  The Court concludes that the prosecutor's comments were proper.

12

**2. Appeals to the Fears and Prejudices of the Jury**

Petitioner alleges next that the prosecutor appealed to the jurors' fears and prejudice by commenting in her opening statement that the testimony would horrify and haunt them (Tr. Dec. 2, 1997, at 29), that the defendants were "brutal and savage murderers" (*id*. at 17), and that, by the end of the trial, the jurors would have looked twice into the face of evil (*id*. at 29). The prosecutor stated in her closing argument that the defendants were "sadistic executioners" and that their acts were "pure evil." (Tr. Dec. 11, 1997, at 3 and 5-6.) The state appellate court opined that these remarks were not improper, when viewed in context.

The Supreme Court has explained that prosecutors "may prosecute with earnestness and vigor" and "may strike hard blows," but they are "not at liberty to strike foul ones. It is as much [their] duty to refrain from improper methods calculated to produce wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States,* 295 U.S. 78, 88 (1935).

The comments that the defendants were "brutal and savage murderers" and "sadistic executioners" were improper because it was equivalent to saying that the defendants were guilty of the murder with which they were charged. Prosecutors may not "express a personal opinion or belief regarding the truth or falsity of any testimony or evidence." *United States v. Hurst*, 951 F.2d 1490, 1502 (6th Cir. 1991) (citing *United States v. Young*, 470 U.S. 1, 8 (1985)). However, the opening statement was intended to summarize what the evidence would show, and the jurors likely were persuaded by the strength of the evidence subsequently presented to them, as opposed to, the prosecutor's opening statement.

The remarks made during closing arguments no doubt were deliberately made. However,

13

the Sixth Circuit "has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing argument." *Wilson v. Mitchell*, 250 F.3d 388, 399 (6th Cir. 2001). Furthermore, the trial court instructed the jurors not to be swayed by sympathy or prejudice and that the attorneys' statements and arguments were not evidence. (Tr. Dec. 11, 1997, at 72 and 75.) "[J]uries are presumed to follow their instructions." *Marsh v. Richardson*, 481 U.S. 200, 211 (1987); *see also United States v. Roberts*, 986 F.2d 1026, 1031 (6th Cir. 1993) (stating that "the prejudicial effect of improper comments may be negated by curative instructions to the jury"). In light of substantial evidence that Petitioner aided and abetted his brother in committing a brutal murder, the jurors likely were not misled by the prosecutor's remarks. Thus, the prosecutor's remarks were not flagrant.

### 3. Appeals to Civic Duty

Petitioner's final allegation about the prosecutor is that she imposed a civic and moral duty on the jurors to convict the defendants when she stated that there could not be enough justice for the acts committed against the victim. The Michigan Court of Appeals determined that the prosecutor's remarks did not constitute an improper civic duty argument.

"Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). Prosecutors may not "call upon the jury to solve a social problem . . . by convicting the defendant," but "it is not improper for the prosecutor to make a 'mere allusion to the general need to convict guilty people.'" *Hutchison v. Bell*, 303 F.3d 720, 751 (6th Cir. 2002) (quoting *Solivan* 937 F.2d at 1154).

The Court looks to *Viereck v. United States*, 318 U.S. 236, 247 (1943), as a guide for

14

determining whether a prosecutor intended his or her comments to incite prejudice and passion

in the jury. *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001). "In *Viereck,* the

[Supreme] Court reversed the conviction of a German foreign agent for willfully failing to

inform the Secretary of State of certain business activities through which he systematically

engaged in propaganda on behalf of Germany." *Id*. The prosecutor exhorted the jury as follows:

> In closing, let me remind you, ladies and gentlemen, that this is war. This is war, harsh, cruel, murderous war. There are those who, right at this very moment, are plotting your death and my death; plotting our death and the death of our families because we have committed no other crime than that we do not agree with their ideas of persecution and concentration camps.
>
> This is war. It is a fight to the death. The American people are relying on you ladies and gentlemen for their protection against this sort of a crime, just as much they are relying upon the protection of the Men who man the guns in Bataan Peninsula, and everywhere else. They are relying upon you ladies and gentlemen for their protection. We are at war. You have a duty to perform here.
>
> As a representative of your Government I am calling upon every one of you to do your duty.

*Viereck*, 318 U.S. at 247 n.3. In contrast, the prosecutor at Petitioner's trial said:

> [M]ake no mistake about it, there is no understanding of the whys of [the victim's] death.
>
> That nightmare can scarcely be comprehended, no less understood. Only as to how, alone, terrified on a cold floor and in an agonizing manner, blindfolded, not even knowing from what direction the next blow would come. Not even knowing.
>
> And even those words, ladies and gentlemen of the jury, *don't do this horror justice. And even you, the jury, will never be able to do justice in this matter. How could there be enough justice for the ruthless slaughter of an innocent woman?*
>
> *How could there be enough justice for the act of savagery that we know now took place? How could there even be enough justice for the terror, panic*

15

> *and pain suffered by Margaret in the last moments of her life.  And the unfortunate truth, there never could be.*
>
> *There never could be enough justice for a woman maimed, mutilated, broken and bloody in a heap on the floor.*
>
> . . . .
>
> *And the truth, unfortunately the truth is that a human life has been ruthlessly and viciously extinguished and there will never be enough justice for that, never, never.*

(Tr. Dec. 11, 1997, at 6-7 and 38) (emphasis added).

The prosecutor did not call upon the jurors to solve a social problem, send a message, or perform a duty.  In fact, she implied that even a guilty verdict would be insufficient and would not undo the injustice perpetrated on the victim.

The disputed remarks were not comparable to the remarks found improper in *Viereck*, and they did not infect Petitioner's trial with such unfairness as to deprive Petitioner of due process.  Therefore, Petitioner has no right to habeas relief on the basis of his "civic duty" claim.

### E.  Denial of Motion for a Directed Verdict

Petitioner alleges next that he was denied his constitutional right to due process when the trial court denied his motion for a directed verdict of acquittal.  He claims that there was insufficient evidence to establish the charge of premeditated and felony murder.  The Michigan Court of Appeals disagreed.  It concluded that the prosecutor presented sufficient evidence to support Petitioner's convictions for premeditated and felony murder and for first-degree criminal sexual conduct.

In Michigan, the standard for evaluating a motion for directed verdict is whether, at the time the motion was made, a rational trier of fact could have found that the prosecutor proved the

16

essential elements of the crimes beyond a reasonable doubt. *People v. Warren*, 228 Mich. App. 336, 345; 578 N.W.2d 692, 696 (1998). To the extent that Petitioner has asserted a federal constitutional question, the issue is whether there was sufficient evidence to support the criminal convictions. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court explained that the relevant question for sufficiency-of-the-evidence claims is " whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original).

Jurors may convict a defendant of murder "only when they are convinced beyond a reasonable doubt that (1) the defendant intended (actually or impliedly) to kill and (2) circumstances of justification, excuse or mitigation do not exist." *People v. Morrin*, 31 Mich. App. 301, 323; 187 N.W.2d 434, 445 (1971).

### 1.  Elements of the Crimes

### a.  Premeditated Murder

First-degree premeditated murder requires a finding that the defendant acted with premeditation and deliberation. *Id.*, 31 Mich. App. at 328; 187 N.W.2d at 448-49.

> To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem.  As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood.  While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look."

*Id*., 31 Mich. App. at 329-30; 187 N.W.2d at 449 (footnotes omitted).

Premeditation and deliberation may be proved by circumstantial evidence. *People v. Herndon*, 246 Mich. App. 371, 415; 633 N.W.2d 376, 404 (2001).  Factors to be considered

17

when determining whether the defendant premeditated and deliberated a murder are: "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *People v. Plummer*, 229 Mich. App. 293, 300; 581 N.W.2d 753, 757 (1998).

### b. Felony Murder

The elements of felony murder are:

(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute . . . .].

*People v. Carines*, 460 Mich. 750, 759; 597 N.W.2d 130, 136 (1999). "[C]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)).

### 2. The Facts

The prosecution established that Petitioner, his brother Melvin, and Brandon Gohagen were drinking beer and smoking marijuana in the backyard of Petitioner's home one summer night in July of 1996. Melvin brought up the subject of the victim, who was living alone in the house next door. Melvin stated that he did not like the victim. He then armed himself with a gun, expressed an intent to "mess with" the victim, and walked toward her home. He later whistled for Petitioner and Gohagen, who followed Melvin into the house. Melvin proceeded to wake up the victim, ordered her to disrobe, and told her to be quiet or he would shoot her.

18

Melvin then ordered Gohagen to sexually assault the victim.  Gohagen also was armed, but he removed his gun from his waistband and handed it to Petitioner when Petitioner motioned for it. Then Gohagen sexually penetrated the victim.  After the sexual assault, Petitioner bound the victim's hands and feet and carried her to the basement of the home.  She was placed in an upright position on her knees in front of Petitioner and Melvin.  She repeatedly said that, if the men left the premises, she would not tell anyone about the incident.  Melvin DeJesus replied, "I know you won't tell anyone, bitch."   Melvin then pushed the victim down and began kicking her in the upper body.  Petitioner likewise kicked the victim a few times.  The victim was moaning when the three men left the house.

The medical examiner testified that the victim died from blunt force head trauma and that her injuries were consistent with being kicked to death.  DNA testing established that Brandon Gohagen could not be excluded as a source of sperm found on a swab taken from the victim's body.

### 3.  Analysis

The evidence as summarized above established that Petitioner, his brother Melvin, and Brandon Gohagen perpetrated the crimes.  The jury could have interpreted Melvin's statement that the victim would not be telling anyone to mean that Melvin intended to silence the victim by killing her.  Petitioner was present when Melvin made the statement.  By joining Melvin in kicking the victim after hearing Melvin's statement, the jury could have inferred that Petitioner shared Melvin's intent to kill the victim or that he aided and abetted Melvin, knowing that Melvin intended to kill the victim.  Thus, when viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the charge of premeditated murder.

19

The evidence also established that Petitioner held a gun while Brandon Gohagen sexually assaulted the victim and that he did not return the gun to Gohagen until the next day. Following the sexual assault, Petitioner bound the victim and joined in kicking her in the upper body. This evidence was sufficient to establish that Petitioner aided and abetted a murder during the commission of a felony and that he intended to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm, knowing that death or great bodily harm was the probable result.

The state court's conclusion that sufficient evidence supporting the charges was a reasonable application of *Jackson*. Therefore, Petitioner has no right to relief on the basis of his claim that the trial court erroneously denied his motion for a directed verdict of acquittal.

## F.  DNA Evidence

The sixth and final habeas claim alleges that the state courts denied Petitioner due process by (1) refusing to provide available DNA biological samples for independent testing and (2) failing to conduct a post-conviction hearing on a forensic scientist's report, which disputed the State's evidence. The habeas petition and Petitioner's pending motion for discovery seek permission to conduct DNA testing of blood found under the victim's fingernail.

Petitioner contends that DNA evidence would establish that blood under the victim's nails came from Brandon Gohagen, not Petitioner. This evidence, alleges Petitioner, would demonstrate that Gohagen acted alone, a theory supported by Petitioner's independent expert, who claims that the victim died of a single stomp to the head. Petitioner further alleges that evidence of Gohagen's blood under the victim's nails would undermine Gohagen's credibility, because Gohagen testified that the witness did not physically resist his sexual assault and that he

20

had no other physical contact with her.  Petitioner argues that DNA evidence would so undermine the State's case that his innocence would be established.

### 1.  The State Court's Refusal to Grant Discovery or a Hearing

State felons convicted at trial before January 8, 2001, may petition the state circuit court to order DNA testing of biological material.  *See* Mich. Comp. Laws § 770.16.  The trial court denied Petitioner's request for DNA testimony on the ground that the results of DNA testing would not undermine the state's theory of criminal liability and would not exonerate Petitioner. The trial court concluded that Petitioner had not met his burden of proving that blood under the victim's nails was material to identification of Brandon Gohagen as the murderer.

The state court's refusal to grant relief under Mich. Comp. Laws § 770.16 is not a basis for habeas relief, because "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, __, 126 S. Ct. 602, 604 (2005); *see also Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (stating that  "this Court 'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition").  Furthermore, "there exists no general constitutional right to post-judgment DNA testing."  *Alley v. Key*, No. 06-5552, 2006 WL 1313364 at *1 (6th Cir. May 14, 2006) (unpublished opinion), *cert. denied*, __ U.S. __, 126 S. Ct. 2973 (2006).  In addition,

> relief may not be granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedures because such claims relate to a state civil matter, not the custody of a defendant.  Therefore, even if [the petitioner] can demonstrate that some error occurred during the state post-conviction proceedings, the claim is not cognizable on federal habeas review.

*Roe v. Baker*, 316 F.3d at 572.  For these reasons, Petitioner has no right to habeas relief on the

basis of the state court's refusal to grant his request for DNA testing.

### 2. Discovery and a Hearing on Habeas Review

"Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition 'alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing.'" *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (quoting *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994)).  Habeas petitioners also are not entitled to discovery as a matter of course.  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). "Rule 6(a) [of the Rules Governing Section 2254 Cases] makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court."  *Id.* at 909.  It is an abuse of discretion not to permit discovery when "'specific allegations before the court show reason to believe that the petitioner may, if the facts were fully developed, be able to demonstrate that he is . . . entitled to relief .'"  *Id*. at 908-09 (ellipsis in original) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).  In such circumstances, "'it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.'"  *Id*. at 909 (quoting *Harris,* 394 U.S. at 300).

The medical examiner testified at Petitioner's trial that he took fingernail clippings from the victim, but that he did not see blood or skin under the nails.  (Tr. Dec. 5, 1997, at 33-34.)  A forensic scientist for the State observed blood on the nails, but he claimed that the amount of blood was too small to send to the lab for testing.  (Tr. Dec. 8, 1997,  at 104-06 and 137.)

Even if Petitioner could establish that blood under the victim's nails was Gohagen's, "a claim of 'actual innocence' is not itself a constitutional claim," *Herrera v. Collins*, 506 U.S. 390, 404 (1993), and "whatever burden a hypothetical freestanding innocence claim would require,

this petitioner has not satisfied it." *House v. Bell*, __ U.S.__, __, 126 S. Ct. 2064, 2087 (2006).
Evidence of Gohagen's blood under the victim's fingernails would not rule out Petitioner's
participation in the crimes. The evidence might undermine Gohagen's testimony somewhat,
because he denied a physical struggle with the victim and he denied having scratches on his face
after the incident. (Tr. Dec. 5, 1997, at 66 and 134.) The jury, however, was made aware that
Gohagen's testimony might not be entirely truthful. Two witnesses claimed that Gohagen had
scratches on his neck after the murder. *See* Tr. Dec. 9, 1997, at 38 (Heather Hunt's testimony)
and at 86 (Jennifer Jones' testimony). The jury convicted Petitioner despite this contradictory
evidence.

There also was evidence that Petitioner had scratches on his face or arms following the
incident. *See* Tr. Dec. 8, 1997, at 11-12 (Hector Negron's testimony) and at 16-17 (Jamie
Martin's testimony). Thus, the possibility exists that DNA testimony would further incriminate
Petitioner and not exculpate him. In short, even if the blood sample could be tested, and
established that Gohagen had been scratched by the victim, such an outcome has such minimal
relevance to the acts presented to the jury that Petitioner cannot establish a due process violation.

Petitioner has failed to show that he would be entitled to relief even if the facts were fully
developed. Therefore, the Court declines to grant discovery or an evidentiary hearing.

### IV. Conclusion

The state courts' adjudication of Petitioner's claims did not result in decisions that were
contrary to, or an unreasonable application of, clearly established federal law as determined by
the Supreme Court. Accordingly, the habeas petition is DENIED. Petitioner's motion for

discovery [Doc. 30, Dec. 7, 2004] also is DENIED.

Dated:  December 20, 2006

                                        S/George Caram Steeh                    
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 20, 2006, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---